DONALD ROCHON, Pro Se
Email: don.rochon@yahoo.com
17192 Murphy Avenue, # 14434
Irvine, California 92623-0419
Cell Phone: 949-943-7045

UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA

| DONALD ROCHON, | Case No. 8:17-cv-00959-JAK (SHK) |
|---|---|
| Plaintiff, | PLAINTIFF'S THIRD MOTION FOR RECONSIDERATION |
| vs. | |
| R. ALEXANDER ACOSTA, Secretary of the U. S. Department of Labor, et al., | MEMORANDUM OF POINTS AND AUTHORITIES |
| Defendants. | Telephonic Hearing Requested November 10, 2020, at 11:00 a.m. |
| | Honorable Shashi H. Kewalramani United States Magistrate Judge |

This motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on October 8, 2020. Pursuant to L.R. 7-18 there is manifest showing of a failure to consider material facts presented to the Court before such decisions.

### I. Introduction

An *original* argument is the Court's decisions ECF Nos. 19, 38, 51 has a major wrong premise just as the recent one, "Plaintiff's SAC sought relief for decisions by the Office of Workers' Compensation Program ('OWCP') and the Employees' Compensation Appeals Board ('ECAB')." This ECAB decision came with caveats.

The OWCP's final decision July 23, 2015 through ECAB's November 16, 2016 decision is not the same issues in the Court decisions. The ECAB in 2016 ***only*** ruled a prior "unsigned, undated" 2010 Settlement Agreement was inadmissible evidence in 2015 to enforce Plaintiff's 2006-2007 restoration rights (5 U.S.C. § 8151) with OWCP.

The gist of the SAC is OWCP Claims Examiners <u>falsely wrote</u> on October 23, 2013 *Plaintiff wanted* a 1990 Settlement Agreement already denied by OWCP in 2008, while concealing OWCP's approved a 2010 Settlement Agreement on racial equality.

ECAB's 2016 decision warned the Court four (4) separate times that the 2010 Settlement Agreement was "unsigned, undated" as inadmissible evidence that could not be enforced by Plaintiff for OWCP July 23, 2015 [*pretext*] final decision. OWCP with FBI's employment records previously approved Plaintiff's 2007 GS-13, Step 10.

ECAB's 2016 decision also warned the Court OWCP's 5 U.S.C § 8101(4) is only a "percentage" rate issue at 5 U.S.C. §§ 8105, 8106, which depends on OPM's 5 U.S.C. § 8151(a) restoration rights for OWCP benefits. Plaintiff does not dispute 5 U.S.C § 8101(4), and no FECA issues at 5 U.S.C. §§ 8102(a), 8149, 8145, 8128(b) are in conflict with the Plaintiff's SAC or this motion herein.

The signed, dated SAC Exhibit 2010 Settlement Agreement for equal protection of the law is not disputed by Defendants on SAC statutes at 5 U.S.C. §§ 8151, 8332(f), 42 U.S.C. § 2000 (e), 5 C.F.R. § 353.304 awarded benefits. Defendants Motion to Dismiss (MTD) knowingly waived their legal defense on these issues FRCP 12(g) (2).

A signed, dated 2010 Settlement Agreement, on behalf of the U.S. Government, as an exhibit to the SAC specifically gave the Plaintiff the right to file *Bivens* actions against "employees" for harm to Plaintiff in their "individual capacities" stemming from their unlawful interference. See *Davis v. Passman*, 442 U.S. 228 (1979).

On *Bivens*, the concise undisputed *scheme* is missing May 2013 Form CA-1032 that results in personnel actions against these employees; and their *willful acts to do harm* in the SAC for their *diversion* by exchanging an approved 2010 Settlement on *racial equality* for benefits to an unapproved 1990 Settlement which was denied by OWCP in 2008. They falsely wrote on October 23, 2013 record that *Plaintiff wanted* 1990 Settlement. This action unlawfully took away 17 years of restoration rights that is not within OWCP's jurisdiction at 5 U.S.C. §8151 for subject matter jurisdiction.

Plaintiff's claims of statutory and constitutional violations by OWCP claims examiners' motive from October 23, 2013 - July 23, 2015 in SAC were discovered *after* the OWCP's 2015 final decision during a January 2016 ECAB discovery. The ECAB did not ruled on these violations because they were not in 2015 final decision.

In *Rodrigues v. U. S. Secretary of Labor, Raymond J. Donovan, et., al.*, 769 F.2d 1344 (9th Cir. 1985) states, "Rodrigues challenges the termination of his workers' compensation benefits, contending that he has been deprived of due process. The district court dismissed his claim for lack of subject matter jurisdiction, on the basis that Rodrigues had failed to exhaust available administrative remedies. We reverse and remand."

The 9th Circuit *Rodrigues* explained, "FECA clearly does not require exhaustion of administrative remedies as a prerequisite to a district court's jurisdiction. As we noted above, FECA precludes federal jurisdiction with regard to the merits of a compensation claim. 5 U.S.C. § 8128(b)." The FECA § 8128(b) is not a lawsuit issue.

**II**. **2010 Settlement Agreement Two Issues – Not Signed/Dated and Signed/Dated**

The Court had tunnel vision. It failed to consider material facts presented to the Court before three decisions by not knowing the difference between the unsigned and undated 2010 Settlement Agreement as inadmissible evidence in the OWCP's July 23, 2015 [pretext] decision in ECAB's November 16, 2016 decision. OWCP with FBI's employment records previously executed Plaintiff's 2007 GS-13, Step 10 on August 9, 2013. The signed and dated admissible evidence 2010 Settlement Agreement in June 23, 2017 SAC at Exhibit ECF. No. 10-1 is for the Court's subject matter jurisdiction.

The Defendants have not claimed and have not cited in any of their motions this actual *signed, dated* SAC Exhibit 2010 Settlement Agreement is in conflict with FECA 5 U.S.C. §§ 8102(a), 8149, 8145, 8128(b). See FRCP 12 (g) (2).

The gist of the SAC is OWCP Claims Examiners <u>falsely wrote</u> on October 23, 2013 *Plaintiff wanted* a 1990 Settlement Agreement already denied by OWCP in 2008,

3

while concealing OWCP's approved a 2010 Settlement Agreement on racial equality. The smokescreen was to conceal a missing required May 2013 Form CA-1032 as their error, which results in internal disciplinary actions against these claims examiners.

Defendants' Exhibit ECF No. 16-1 is their ECAB 2016 decision. The Court had caveats on 4 separate decisions from ECAB. The ECAB decided the OWCP July 23, 2015 *pretext* itself was not to recognize an "unsigned, undated" 2010 Settlement Agreement as valid. ECAB did not rule on *reprisal/discrimination* motive SAC ¶ 71.

In December 2009, OWCP National Office had unsigned, undated Settlement Agreement from Attorney General and OPM as notice of Plaintiff's impending Restoration Rights with the Federal Government. Once Attorney General notified the Settlement was signed by everyone, OWCP placed their December 2009 copy of the unsigned, undated Settlement on Plaintiff's claim file January 26, 2010. See SAC ¶ 25.

The OWCP in 2015 and ECAB in 2016 decisions are all based on this unsigned, undated 2010 Settlement Agreement as their only available record. In 2016, once the matter was before the ECAB with OWCP's 2015 final decision, ECAB refused to accept for any reconsideration the signed, dated 2010 Settlement Agreement evidence due to 20 C.F.R. § 501.2 (c)(1), "… evidence in the case record that was before OWCP at the time of its final decision."

The OWCP had previously approved and executed on August 9, 2013 the terms of the 2010 Settlement Agreement based on FBI's employment records for a 2007 GS 13, Step 10, while knowing only an unsigned, undated 2010 Settlement Agreement was on the OWCP's records since 2010. See SAC ¶¶ 31- 41, with SAC Exhibits ECF Nos. 10-2, 10-3.

<u>Decision 1</u>:  ECAB at 3-4, "Appellant attached a copy of an unsigned, undated settlement agreement between the employing establishment."(its footnote 6 at page 4).

<u>Decision 2</u>: Footnote 6 is merely the same "unsigned, undated" 2010 Settlement Agreement that is inadmissible evidence discussed for its pages 3-4.

4

<u>Decision 3</u>: ECAB at 7, "As to appellant's assertion on appeal that, based on a 2010 settlement agreement, he is entitled to compensation based on a recurrent pay rate that was in effect when he officially retired in 2007, **he is referring to an unsigned, undated settlement agreement which indicates that it is between him and OPM**. While its terms are in regard to retirement benefits this in no way impacts his FECA compensation." (Bold type added)  (this sentence has attached footnote 13)

<u>Decision 4</u>: ECAB footnote 13 merely loops back to footnote 6, 2010 Settlement Agreement "unsigned and undated" ECAB at 3-4 decision full encircled <u>4</u> decisions.

The Court's Report and Recommendation (R & R) ECF No. 19 at 14 clear error of material omission is the <u>4</u> decisions from ECAB's caveats "undated, unsigned" 2010 Settlement Agreement (unenforceable standard rule of evidence).The R & R at 14 states, "Specifically, in footnote 6 of the ECAB Order, the ECAB Order states that the 2010 Settlement Agreement referred to 'service credit,' but later concluded that '[w]hile [the 2010 Settlement Agreement's] terms are in regard to retirement benefits, this in no way impacts his FECA compensation.'"

By Court's R & R material omission of not citing the critical warnings of an "unsigned, undated" 2010 Settlement Agreement with ECAB's 4 decisions, somehow developed misleading tunnel vision. The R & R misconstrued ECAB had denied the actual signed, dated 2010 Settlement Agreement the Plaintiff had placed with the Court's record in 2017 at Exhibit ECF No. 10-1. The Court's R & R at 12-20 in a rush to judgment then came to the wrong conclusion the entire civil suit issues were under FECA 5 U.S.C. §§ 8102(a), 8149, 8145, 8128(b), and never looked back.

The Defendants' prior 2017 MTD ECF No. 16 did not dispute the Plaintiff's signed, dated 2010 Settlement Agreement SAC Exhibit to the Court. The Defendants had carefully worded their MTD to pinpoint the *sole* prior unsigned, undated 2010 Settlement Agreement issue in 2015-2016 (that had <u>4</u> decisions from the ECAB), while conspicuously not citing the 2017 SAC Exhibit signed and dated 2010 Settlement

Agreement that is actually enforceable for 17 years of restoration rights 1990-2007, which is the Plaintiff's primary statutory enforcement claim at SAC ¶ 72 at (1).

The Defendants are fully aware they have no jurisdiction to dispute the signed and dated 2010 Settlement Agreement filed with the SAC. See Exhibit ECF No. 10-1 at 10, "XV. <u>Interpretation Consistent with Federal Law</u>: Nothing in this Settlement Agreement shall be interpreted or construed in a manner inconsistent with, or contravening, any Federal law, rule or regulation at the time of the effective date of this settlement Agreement, or as amended thereafter." This is all on restoration rights.

The interpretation is consistent with federal laws on OPM's restoration rights at 5 U.S.C. § 8151, 8332(f); Attorney General Title VII 42 U.S.C. § 2000 (e); and MSPB restored rights 5 C.F.R. § 353.304 at SAC ¶¶ 14-19, 26-27. Neither the ECAB's 2016 decision nor the Defendants' MTD addressed or disputed these statutes because the only issue is an "unsigned, undated" 2010 Settlement Agreement that was inadmissible evidence to enforce the Plaintiff's 17 years restoration rights 1990 -2007 with OWCP.

Indeed, SAC ¶ 15 states, "U.S. Department of Labor Employees' Compensation Appeals Board (ECAB) precedent decision *Joel T. Steinmetz*, Docket No. 05-518, issued on June 17, 2005 had confirmed this fact. That precedent decision states: 'An employee seeking to appeal an agency's failure to restore or improper restoration' is to make such an appeal to the Merit Systems Protection Board.' The ECAB [Board] also states as the law in *Steinmetz*, 'This Board has no jurisdiction on this issue.'"

Plaintiff had met the *Steinmetz'* MSPB restoration requirements in 2010 as was instructed by ECAB. But because ECAB's only decisions were merely an undated, unsigned 2010 Settlement Agreement issue ECAB did not apply the *Steinmetz* ruling.

Both, the ECAB in 2016 decision and Defendants in 2017 MTD, knew that an actual *signed, dated* 2010 Settlement Agreement is fully enforceable restoration rights.

See undisputed signed, dated 2010 Settlement Agreement SAC Exhibit 10-1 at 3, "G. For purposes of this Settlement Agreement, the term 'United States' shall mean

the United States agencies, departments, components, establishments…or employees either in their official or individual capacities." [1] This is the claim on SAC ¶ 72 at (1).

Not disputed by the ECAB in 2016 nor the Defendants' MTD, is the OWCP's Defendants executed August 9, 2013 Plaintiff's 2007 GS-13, Step 10 based on the FBI employment records as reflected in an unsigned, undated 2010 Settlement Agreement on their records since 2010. Plaintiff reported misconduct/racial bias in March/April 2015 is when Defendants came up with their pretext of an unsigned, undated 2010 Settlement on July 23, 2015 that it was now unenforceable for a 2007 GS-13, Step 10.

The realm of a requested Jury Trial, but not the Judge, is to decide if motive was unlawful reprisal and discrimination. Plaintiff's civil rights suit is not a FECA issue, and legal precedents cited by the Court's decisions on FECA are irrelevant. The subject matter jurisdiction is the deprived racial equality awarded in 2010 to Plaintiff.

The Court's R & R at 12-20 is a clear error in a rush to judgment as the basis for all its other two related decisions to date. See *389 Orange St. Partners v. Arnold*, 179 F.3d 656, 665 (9th Cir. 1999). See FRCP 59(e) along with 60(b) (1) (6).

### III. ECAB Informed Court 5 U.S.C. 8101(4) is Only Percentage Rate Jurisdiction

In Defendants' MTD at Exhibit ECF No. 16-1 at 6, the ECAB had explained to the Court under "LEGAL PRECEDENT -- ISSUE 1" by clarifying their sole pay rate "percentage" jurisdiction, "Monetary compensation for total or partial disability due to an employment injury is paid as a percentage of monthly pay. Section 8101(4) of FECA provides that 'monthly pay' means the monthly pay at the time of injury or the monthly pay at the time disability begins or the monthly pay at the time compensable disability recurs if the recurrence begins more than six months after the injured employee resumes regular full-time employment with the United States, whichever is

---

[1] Undisputed SAC Exhibit 1 agreement with "United States" permits *Bivens*' action on "employees" for their "individual capacities" harm on 2010 Settlement; and under FRCP12 (g)(2) Defendants' MTD also waived injunctive relief against OWCP/DOL.

greater." ECAB first sentence footnote 9 cites the percentage rate for the OWCP's jurisdiction 5 U.S.C. §§ 8105, 8106 at 66⅔ % (75% if married or have a minor child).

The OWCP's 5 U.S.C. §§ 8101(4), 8105, 8106 works in harmony with OPM's 5 U.S.C. 8151 "Restoration Rights with the Federal Government" in OWCP Manual Exhibit ECF No. 30-1 at 3. The OWCP is dependent on OPM for its FECA benefits.

Plaintiff is not disputing 5 U.S.C. §§ 8101(4), 8105, 8106 "percentage" rate for any FECA issue 5 U.S.C. §§ 8102(a), 8149, 8145, 8128(b). See ECF No. 39 at 6-8.

In *Rodrigues* 769 F.2d 1344 (9th Cir. 1985) cited above, "FECA clearly does not require exhaustion of administrative remedies as a prerequisite to a district court's jurisdiction… FECA precludes federal jurisdiction with regard to the merits of a compensation claim. 5 U.S.C. § 8128(b)." FECA 5 U.S.C. §§ 8101(4), 8105, 8106 percentage payment is not disputed by the Plaintiff for the Court's jurisdiction. The SAC ¶¶ 14, 26, 63-64 made clear to Court it is the OPM's jurisdiction 5 U.S.C. § 8151 ("Regulations") for a 2007 GS-13, Step 10 at issue, **not** §§ 8101(4), 8105, 8106.

The OPM jurisdiction in the SAC ¶¶ 14, 26, 63-64 at 5 U.S.C. § 8151(a), "In the event the individual resumes employment with the Federal Government, the entire time during which the employee was receiving compensation under this chapter shall be credited to the employee for the purposes of within-grade step increases, retention purposes, and other rights and benefits based upon length of service."

<u>OPM</u>  5 U.S.C. § 8151(a), "…shall be credited…within-grade step increases…" for 2007 GS-13, Step 10 with <u>OWCP</u>  5 U.S.C. §§ 8101(4), 8105, 8106 is a companion "percentage" rate for OPM's completed restoration rights for a 2007 GS-13, Step 10.

Defendants did not provide Plaintiff a lower pay rate percentage rate at 5 U.S.C. §§ 8101(4), 8105, 8106 as the Court misconstrued. Instead, **not under** the Defendants jurisdiction, had deprived Plaintiff's Title VII Civil Rights (African-American) for racial equality by Attorney General and OPM for 5 U.S.C. § 8151(a) "restoration rights." This is for years **1990** grade GS-13, Step 2 <u>through</u> **2007** grade GS-13, Step10

8

(17 years) as the subject matter jurisdiction that is **not within** Defendants' OWCP jurisdiction. Depriving racial equality is Fifth Amendment Equal Protection violation.

SAC is straightforward: OWCP Claims Examiners <u>falsely wrote</u> on October 23, 2013 *Plaintiff wanted* a 1990 Settlement Agreement already denied by OWCP in 2008, while concealing OWCP's approved a 2010 Settlement Agreement on racial equality.

In Defendants' MTD at Exhibit ECF No. 16-1 at 6, the ECAB has explained by clarifying their sole pay rate is only "percentage" jurisdiction 5 U.S.C. § 8101(4). The Court had relied on 5 U.S.C. § 8101(4) as it was the restoration rights. In fact, that percentage rate does not become effective without OPM's 5 U.S.C. § 8151(a) "restoration rights." Plaintiff's civil suit is not a FECA jurisdiction, and every legal precedents cited by the Court's three decisions on FECA are totally irrelevant.

This is a manifest showing of the Court's clear error to consider material facts presented to the Court for all of its three related decisions. *389 Orange St. Partners v. Arnold*, 179 F.3d 656, 665 (9th Cir. 1999). See FRCP 59(e) with 60(b) (1) (6).

**IV. Plaintiff Filed 2017 Civil Rights Lawsuit to Preserve His *Bivens*' Remedy**

A clear error by Court is [undisputed] *signed, dated* 2010 Settlement Agreement with "United States" SAC Exhibit 10-1 at 3 on "G" to enforce *Bivens*' agreed on the "individual capacities" claims examiners "employees" harm to Plaintiff at *Davis v. Passman*, 442 U.S. 228 (1979). As background, Plaintiff filed his civil rights suit SAC June 23, 2017. In January 2016, Plaintiff discovered his *Bivens* claims with a two year statute of limitations that was met before January 2018 (ECF No. 39 at 9, 12).

Lawsuit 42 U.S.C. §1983 is for compensatory damages. Generally, the law for civil rights suits brought pursuant to 42 U.S.C. § 1983 is incorporated in a *Bivens* action. See *Ting v. United States*, 927 F.2d 1504, 1511 (9th Cir. 1991). This 42 U.S.C. § 1983 is cited on the Court's Pacer web-link for *Bivens'* legal notice to the Court and Defendants. Defendants MTD at ECF No. 16 did not dispute *Bivens'* SAC facts/issues for "individual capacities" with their legal defense waived today at FRCP 12 (g) (2).

9

The First Amended Complaint (FAC) ECF No. 8 at first front page and at ¶ 5 cited 42 U.S.C. §1983 for damages against individual state actor. After Plaintiff's FAC was reviewed at the District Court Pro Se Clinic, he was instructed to file SAC ECF No. 10 by citing 28 U.S.C. § 1331 at corrected front page and corrected ¶ 5 so the Defendants would clearly know this is a *Bivens* actions for their federal "individual capacities" five (5) "employees." Plaintiff also requested a Jury Trial for compensatory damages. This lawsuit also included injunctive relief against the Secretary of Labor for the unlawful acts of his individual OWCP employees. Claim is at SAC ¶ 72 at (1).

The Defendants' MTD at ECF No. 16 was filed FRCP 12(b) (1) lack of subject-matter jurisdiction to bring all the unresolved issues back to the OWCP's jurisdiction. However, the Court has *both* constitutional and statutory violations jurisdiction. See *Staacke v. U.S. Secretary of Labor*, 841 F.2d at 281(9th Cir. 1988).

The gist of the SAC is OWCP Claims Examiners falsely wrote on October 23, 2013 Plaintiff wanted a 1990 Settlement Agreement already denied by OWCP in 2008, while concealing OWCP's approved a 2010 Settlement Agreement on racial equality.

Since Plaintiff is appearing *pro se*, the Court must construe the allegations of the SAC liberally and must afford Plaintiff the benefit of any doubt. This has not been done in any prior Court decisions for L.R. 7-18. See *Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 623 (9th Cir. 1988).

Moreover, determining whether the SAC states a claim on which relief may be granted on subject matter jurisdiction, its allegations of material fact must be taken as true and construed in the light most favorable to Plaintiff. See *Love v. United States*, 915 F.2d 1242, 1245 (9th Cir.1989). The SAC ¶¶ 42 - 43, 69, 72 at (1) (3), is the factual foundation of the *Bivens* actions for Claims Examiner C. Melanie Galan and Senior Claims Examiner Erick Davis for the Court's subject matter jurisdiction.

//

//

10

To summarized the SAC *Bivens* actions: an October 23, 2013 falsified record "CA-110" motive by OWCP "individual capacities" employees' Ms. Galan and Mr. Davis is to conceal that they forgot to provide Plaintiff in May 2013 their required OWCP Form "CA-1032", which causes internal personnel disciplinary actions against these OWCP employees. A CA-1032 is a mandated FECA declaration that Plaintiff must be provided and signed he was not working since the OWCP's approved disability date April 8, 2012 to receive *any type* of FECA disability compensation. The OWCP approved and executed on August 9, 2013 the parties' agreement by fully removing Plaintiff from OPM's 2007 GS-13, Step 10 at 61% to OWCP's 2007 GS-13, Step 10 at 75% with the word "entitlement" pursuant to FECA 5 U.S.C. §§ 8101 (4), 8151, 8332(f) as the *status quo.*

Later, to cause a diversion on the missing May 2013 CA-1032, Ms. Galan and Mr. Davis deceit had concealed OWCP's *executed* entitlement for August 9, 2013 on superseding 2010 Settlement Agreement 2006-2007 "restoration rights" 75% at 2007 GS 13, Step 10 (racial equality). Instead, Defendants falsely wrote October 23, 2013 CA-110 that the Plaintiff wanted the 1990 Settlement Agreement "front pay" (75% at 2007 GS-14, Step 6) previously denied by OWCP in 2008. This had the adverse effect as if the OPM's 5 U.S.C. § 8151 jurisdiction had never occurred on 2006-2007 restoration rights in 2010 Settlement Agreement that was concealed.

This caused Plaintiff to receive at 75% 1990 GS 13, Step 2, while wiping out 17 years (through 2007) of OPM's and Attorney General's Civil Rights for employment. The **1990** GS-13, Step 2 to 2007 GS-13, Step 10 that was deprived under the OPM and Attorney General exclusive jurisdiction is in SAC Exhibit ECF No. 10-1 at 6-7. Interference of 2010 Settlement is the harm SAC Exhibit 10-1 at 3 on "G" for lawsuit.

The aforementioned factual allegations in the SAC are enough to raise a right to relief above the speculative level…" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007); See also *Ashcroft v. Iqbal*, __ U.S. __,

129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009)

A *Bivens* action states a civil rights complaint against a federal official. See *Bivens*, 403 U.S. at 388. To state a *Bivens* action, the Plaintiff has allege facts showing a person acting under color of federal authority deprived the Plaintiff of a right, privilege, or immunity secured by the Constitution that were provided in the 2010 Settlement Agreement, along with undisputed FBI employment records, for racial equality. *Bivens*, 403 U.S. at 389. See SAC Exhibits ECF Nos. 10-2, 10-3.

Successful *Bivens* claim requires that a defendant be personally involved in the deprivation of Plaintiff's constitutional rights. *Tajeddini v. Gluch*, 942 F.Supp. 772, 779 (D.Conn. 1996), citing *Gill v. Mooney*, 824 F.2d 192, 196 (2d Cir.1987). Plaintiff has proved such personal involvement through evidence that: "1) the defendant participated directly in the alleged infraction; 2) the defendant, with actual or constructive knowledge of the violation, failed to remedy the wrong; 3) the defendant created or permitted the policy or custom under which the unconstitutional practices occurred; 4) the defendant was grossly negligent in managing subordinates who caused the violations; or 5) the defendant failed to act on information indicating that the constitutional deprivations were taking place."*Tajeddini*, 942 F. Supp. at 779 (citing *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir.1995). See FRCP 59(e), 60(b) (1) (6).

Aside from Ms. Galan and Mr. Davis in 2013, there are three other employees involved with them in the SAC at later dates, 2014 and 2015. On July 23, 2015, is when a concocted "pretext" of an "unsigned, undated" (ECAB's 2016 decision) 2010 Settlement to divert attention from the missing required May 2013 Form CA-1032. *See* SAC ¶¶ 45-47, 70-71, 72 at (1) (3) on the three other subsequent related employees.

The Court's three decisions for ECF Nos. 19, 38, 51 have not mentioned any of the Plaintiff's pleaded actual facts on Ms. Galan and Mr. Davis. On *Bivens*, the concise undisputed *scheme* is missing May 2013 Form CA-1032 that results in personnel actions against these employees for their diversion; and their *willful acts to do harm* in

12

the SAC by exchanging approved 2010 Settlement on *racial equality* for benefits with another unapproved 1990 Settlement denied by OWCP in 2008. They falsely *wrote* on October 23, 2013 record *Plaintiff wanted* 1990 Settlement for his benefits. Therefore, Plaintiff has been discriminated on benefits designed to provide racial equality on employment rights. See *Davis v. Passman*, 442 U.S. 228 (1979) that is omitted by the Court's three decisions on Plaintiff's material facts for L.R. 7-18.

The Court's decision ECF No. 51 at 4 states, "Here, Plaintiff merely includes vague allegations about lies and a conspiracy to provide him with less FECA benefits." If that were true, the Court was required to dismiss SAC with Leave to Admen. SAC is a non FECA issue 5 U.S.C. § 8101 (4) *percentage* previously explained in this motion.

Indeed, *Lanuza v. Love,* 899 F. 3d 1019 (9th Cir. 2018) L.R. 7-18 was available for each of the Court's two clear error decisions on August 28, 2018 and September 16, 2019 after it was ruled on by the 9th Circuit on August 14, 2018, which also cited *Davis v. Passman*, 442 U.S. 228 (1979) on discrimination of equality for *Bivens*.

A Court is expected to know, ***but not*** a *pro se* Plaintiff, these legal precedents on the material facts not disputed in Defendants' MTD now waived at FRCP12 (g) (2).

The SAC exhibit signed, dated 2010 Settlement provided right to sue "individual capacities" of "employees" for this 2010 Settlement Agreement interference on racial equality were clearly known by the Defendants. This is a clear error by the Court.

**V. Plaintiff is Entitled That Court's Three Decisions Be Free of Tainted Bias**

A *pro se* Plaintiff is not under higher standards at L.R.7-18 then a federal judge to locate the same *Lanuza* precedent alleged by the Court's decision ECF No. 51 at 4.

This is racially charged remarks by Magistrate Judge to hold a Black (70 years old & disabled) civil rights suit *pro se* Plaintiff to a far higher legal standards than the Judge to find a ***new*** legal precedent is judicial abuse to dismiss this lawsuit. This is not the high standards expected at the Central District Court by Judges illustrated herein.

//

*Lanazu* was on August 2018 and the *pro se* Plaintiff's motions September 2018 and October 2018. That is a two month window impossible for *pro se* Plaintiff. But this is not the issue because the Defendants MTD on September 22, 2017 had clearly waived their *Bivens*' defense, which would have included *Lanazu* in 2018 pursuant to FRCP 12 (g) (2), "Limitation on Further Motions... must not make another motion under this rule raising a defense or objection." This was already explained to the Court in Plaintiff's reply ECF No. 43 at 2-3. Coincidentally, Magistrate Judge is the former employee of Defendants' civil attorneys at the U.S. Attorney's Office, and who is at the same time makes racially charged insults to Plaintiff that has benefited Defendants.

The Central District Court does not tolerate any bias or backhanded insults by Judges to litigants or court employees. https://abc7.com/la-chief-federal-judge-resigns-central-district-california-street-smarts-comments-racially-charged/6279712/

L.R. 7-18 holds any Federal Judge to a far higher legal standard then a disabled, elderly *pro se* Plaintiff to find legal precedents at reconsideration motion ECF No. 39. This includes any and all errors Plaintiff found by the Court in this motion. Judicial abuse would be for the Court to blame this *pro se* Plaintiff for discovering its errors.

Magistrate Judge misconstrued three decisions - a long year apart disrespectful - in 2018, 2019 and 2020 that disparaged Plaintiff by omitting deprivation of his 2010 awarded civil rights by wrongly calling it "to provide him with less FECA benefits." As Plaintiff has pointed out previously, he is not disputing the FECA "percentage" rate jurisdiction 5 U.S.C. §§ 8101(4), 8105, 8106, 8128(b) in Court decision ECF No. 51 at 4 on *Markham v. United States*. The FECA percentage rate is not an issue that was already explained by the ECAB at Plaintiff's previous motion section herein "III."

The gist of the SAC is OWCP Claims Examiners <u>falsely wrote</u> on October 23, 2013 <u>Plaintiff wanted</u> a 1990 Settlement Agreement already denied by OWCP in 2008, while concealing OWCP's approved a 2010 Settlement Agreement on racial equality. These details *prima facie* facts are in a <u>Verified</u> SAC ¶¶ 42 - 43, 69, 72 at (1) (3).

But the only words Magistrate Judge said at ECF No. 51 at 4 is "Plaintiff merely includes vague allegations about lies and a conspiracy to provide him with less FECA benefits." If that were true, the Court was required to dismiss the SAC with "Leave to Admen" as there is no FECA issue on *percentage rate* 5 U.S.C. § 8101 (4) explained in this motion. However, Magistrate Judge made a racially charged insult on that same decision page that a disabled, elderly, *pro se* Black Plaintiff in a civil rights suit should be better able to find legal precedents then the Judge. This is obviously 1950s style insults from courts in the Old Deep South made to demoralize Black people struggling for equality - but certainly not tolerated by any Black people today for FRCP 60(b)(6).

The civil rights in the SAC were provided by Attorney General's 42 U.S.C. § 2000 (e) and OPM's jurisdiction 5 U.S.C. § 8151 (2006-2007 restoration right) for the years 1990 – 2007 *(**17 years**)* that is **not within** OWCP's FECA jurisdiction.

This Magistrate Judge has sidestepped his every written decisions avoiding 2010 Settlement Agreement is a "Title VII Civil Rights Act" for equal protection of the law on "restoration rights" for racial equality of 17 years for subject matter jurisdiction.

OWCP claims examiners harm causation with no statutory jurisdiction 5 U.S.C. § 8151 had deprived 17 years restoration rights that caused inequality to Black Plaintiff *protected class* for subject matter jurisdiction *Davis v. Passman*, 442 U.S. 228 (1979).

In 2010 Settlement Agreement, the Attorney General and OPM civil rights goals is for Plaintiff's hard fought racial equality as readily apparent in the SAC.

Retired Plaintiff's FBI employer is in full compliance that has generated and provided employment records that Plaintiff is an *eligible* and *qualified* FBI Special Agent for statutory employment restoration rights at SAC ¶¶ 55-56 with SAC Exhibits ECF Nos. 10-2, and 43-2 at 1 (*disclosure* on FBI's Personnel Security Section awarded to Plaintiff Exhibit ECF No. 43-2 at 1 is in ECF No. 46 at 14, footnote 2).

SAC ¶ 64 cited the most relevant ECAB's decision ignored by the Magistrate Judge that states, "The issue of his restoration rights is for the employing establishment

or Office of Personnel Management to address… As neither OWCP nor the Board [ECAB] have jurisdiction over this issue." Here, ECAB told Magistrate Judge that Defendants cannot interfere with OPM's 5 U.S.C. § 8151 benefits to Plaintiff.

If a Magistrate Judge were to Order Defendants to give Plaintiff his signed, dated 2010 Settlement Agreement (2007 GS-13, Step 10) for Attorney General and OPM jurisdiction restoration rights 5 U.S.C. § 8151(a) for benefits, Defendants would do so quickly without objection pursuant to OWCP Manual Exhibit ECF No. 30-1 at 3.

However, if a Magistrate Judge were to Order the Defendants on the amount of what "percentage" rate to give Plaintiff at 5 U.S.C. §§ 8101(4), 8105, 8106, 8128(b), it would be disputed on subject matter jurisdiction because it is OWCP's jurisdiction. The Plaintiff has not disputed for benefits 5 U.S.C. §§ 8101(4), 8105, 8106, 8128(b).

The crux of the Plaintiff's SAC is equal protection of the law on racial equality pleaded on 5 U.S.C. §§ 8151, 8332 (f), 42 U.S.C. § 2000 (e), 5 C.F.R. § 353.304 for his awarded 17 years of employment 1990 – 2007 (restoration rights at 2006-2007).

Given the facts herein, Magistrate Judge ("SHK") refuses to articulate any deprivation of a statutory awarded racial equality to a Black Plaintiff, which is the linchpin statutory and constitutional subject matter jurisdiction pleaded in the SAC.

Accordingly, Plaintiff respectfully requests the District Court Judge ("JAK") to reassign this motion to another Magistrate. The original Magistrate Judge ("KES") picked by Central District Court computer June 5, 2017 is available in the Southern Division where this civil rights suit is filed and where Plaintiff resides for a *status quo*.

**VI. <u>Plaintiff Requests Court Enforce Signed, Dated 2010 Settlement Agreement</u>**

Plaintiff hereby requests injunctive relief by the Court in SAC at 24 for # 1 remedy "Compel immediately" that is not being disputed in any Defendants' motions to the Court on Title VII Civil Rights and 5 U.S.C. § 8151(a) jurisdiction, contingent on FRCP 59 (e), 60 (b)(1)(6) for L.R. 7-18 for the legal grounds if granted by Court.

//

This request is for the [undisputed by Defendants] actual *signed, dated* 2010 Settlement Exhibit ECF No. 10-1 at 3 on "G" (signatures at 11-14) binding the entire United States Government, including the Court's jurisdiction as part of the U.S. Government's "establishments." This claim is pleaded at SAC ¶ 72 at (1).

A "Compel immediately" injunctive relief shall succeed on merits of underlying claim because the Defendants are not disputing the exclusive jurisdictions of Attorney General's Civil Rights 42 U.S.C. § 2000 (e), and OPM's 5 U.S.C. § 8151(a) awarded entitlements for Restoration Rights with Federal Government "2007 GS-13, Step 10."

Moreover, Plaintiff is not disputing OWCP's jurisdiction at 5 U.S.C. 8101(4) "percentage" rate at 5 U.S.C. § 8105, 8106, 8128(b) to be applied to his OPM 5 U.S.C. § 8151(a).

The purpose of the 2010 Settlement Agreement is for equal racial justice in the public interest awarded to Plaintiff so the balance of the equities shifts to Plaintiff.

Indeed, Plaintiff will suffer irreparable harm that is taking a physical and emotional toll over the years to an already disabled Plaintiff as determined by the Defendants' own records on file with the Court (Exhibits ECF Nos. 46-4 and 46-5).

In fact, OWCP already agreed to the start date "April 8, 2012" for Plaintiff's "period of entitlement" 2007 benefits in its records Exhibit ECF No. 10-3 at 23-26.

### VII. Conclusion

Given all the above facts and laws cited herein at sections "II" through "V" on the four grounds, this final Third Motion for Reconsideration should be granted for subject matter jurisdiction. This is for Plaintiff's awarded Equal Protection of the Law on racial equality for the Civil Rights objective of the United States Government.

Dated: October 15, 2020                                Respectfully submitted,
                                                       /s/ Donald Rochon
                                                       Donald Rochon, *Pro Se* Plaintiff

Proposed Court Order emailed to Magistrate Judge and Defendants' Attorney.